UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| United States of America,<br><br>v.<br><br>Timothy Dyson Bell | Case No. 4:06-cr-00583-TLW<br><br>**Order** |

This matter is before the Court on Defendant Timothy Dyson Bell's *pro se* motion for a sentence reduction under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 960. For the reasons set forth below, his motion is denied.

## BACKGROUND

On January 29, 2019, the Court revoked Defendant's supervised release for use of illegal drugs, and new criminal conduct, including PWID cocaine base, assault and battery. ECF No. 851, 853. The Court imposed an overall sentence of 57 months with no supervised release to follow. BOP records reflect that he is scheduled to be released from custody on December 19, 2023.

## APPLICABLE LAW

Absent certain exceptions, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of those exceptions is the compassionate release statute. That statute provides, in relevant part, as follows:

> [T]he court, . . . upon motion of the defendant . . . , may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) . . . , if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). "A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted." *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020).

The Sentencing Commission has issued a policy statement addressing compassionate release motions—§ 1B1.13. But prior to the passage of the First Step Act, compassionate release motions could only be filed by the BOP, so § 1B1.13 by its terms only applies to BOP motions. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020) (explaining the First Step Act's changes to the compassionate release statute). There is no corresponding policy statement addressing compassionate release motions filed by inmates. Thus, in *McCoy*, the Fourth Circuit held that, when considering an inmate's compassionate release motion, § 1B1.13 is not an "applicable policy statement[]." *Id.* at 284. But while § 1B1.13 may not directly apply to an inmate's motion, "it remains helpful guidance." *Id.* at 282 n. 7.

While § 1B1.13 may provide guidance, it is not an "applicable policy statement[]," so "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d. Cir. 2020)) (emphasis in original); *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). Ultimately, the determination of whether a case presents extraordinary and compelling reasons warranting a sentence reduction is a question reserved to the sound discretion of the district court.

## DISCUSSION

In Defendant's motion, he seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A) on grounds that his medical conditions make him especially vulnerable to becoming seriously ill from COVID-19 and that he is more likely to contract COVID-19 in prison than outside of prison. He asserts that he previously contracted COVID-19 while incarcerated, suffers from hypertension, and is prescribed Chlorthalidone. ECF No. 972. Defendant submitted medical records that verify this condition. ECF No. 972-1 at 1-6.

The Government opposes his motion, arguing (1) that Defendant's hypertension is insufficient to establish "extraordinary and compelling reasons" under the statute; and (2) that the § 3553(a) factors strongly disfavor a sentence reduction. ECF No. 984 at 6.

In arguing that Defendant has not identified "extraordinary and compelling reasons" for a sentence reduction, the Government points out that the Defendant "offered nothing in his original motion beyond fear of COVID-19 generally." ECF No. 984 at 8. The Government acknowledges that the Defendant submitted supplemental filings where he claims various ailments, but the medical records indicate "that everything is within normal limits," including usage of Chlorthalidone, a prescription used to treat Defendant's high blood pressure. *See Id.;* ECF No. 971. Moreover, the Government argues Defendant "no longer presents an 'extraordinary and compelling reason' that could warrant release because he has been fully vaccinated against

COVID-10.[1] In support of this position, the Government refers to the guideline policy statement which treats an "extraordinary and compelling" circumstance as "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *See* ECF No. 984 at 9; U.S.S.G. § 1BIB.13 app. Note 1(A)(ii). In sum, the Government argues an "extraordinary and compelling" circumstance under this provision "does not exist in this case" because the Defendant has received a vaccine effective in preventing COVID-19 infection for participants with "medical comorbidities associated with high risk of severe COVID-19 disease." *See* ECF No. 984 at 9; FDA Decision Memorandum, Pfizer – Dec. 11, 2020, https://www.fda.gov/media/144416/download.

The Government outlines Defendant's instant offense conduct and his criminal history. ECF No. 984. The Government then argues that those considerations weigh against release. In particular, the Government points out that his "initial criminal conduct involved an extensive drug conspiracy involving substantial amounts of crack cocaine." ECF No. 984 at 10. "Defendant also has an extensive history of trafficking in illegal narcotics for which he served substantial prison time. . . [y]et Defendant continued to show a total disregard for the law" *Id*. The Government points out that Defendant continued this disregard for the law while on supervised release, that being the offense conduct for which he is incarcerated. *Id*.

---

[1] The Government includes an exhibit dated March 23, 2021, documenting that BOP administered to Defendant the second and final dose of COVI-19 vaccine. *See* ECF No. 984-1 at.

In considering whether to reduce Defendant's sentence, the Court has carefully reviewed the Presentence Investigation Report and has considered the statutory penalties, the Guidelines range, applicable caselaw and statutory law, the § 3553(a) factors, and his post-sentencing conduct[2]. In light of those considerations, the Court concludes that Defendant has not shown that "extraordinary and compelling reasons" warrant a reduction or that the § 3553(a) factors weigh in favor of release. The Court's reasons for reaching this conclusion include (1) Defendant's medical records that indicate treatment and care for his medical conditions, (2) the seriousness of the instant offense, and (3) his criminal history that involves additional serious conduct.

As to the "extraordinary and compelling reason" standard, the Court has reviewed the medical records attached to his motion and considered all of the circumstances and arguments raised by Defendant and concludes that he has not established an "extraordinary and compelling reason" that warrants a sentence reduction. Defendant's medical records reflect that he has been diagnosed with hypertension. ECF No. 972-1 at 2-7. The medical records also reflect that Defendant has seen health services on numerous occasions and receives prescription medication to control his hypertension and indicate that he is receiving abundant medical treatment by the BOP. *Id.* The records do not indicate that Defendant experiences serious complications from his physical or medical conditions that warrant release. In contrast, the records demonstrate that Defendant's conditions are being treated,

---

[2] The Court has considered in its analysis all of the issues raised in Defendant's filings, including (1) the impact of COVID-19 at his facility; (2) the way that the BOP is managing the pandemic at its facilities; (3) his physical and medical conditions in light of COVID-19; and (4) the percentage of his sentence remaining.

monitored, and controlled. Therefore, the Court finds that neither Defendant's physical condition nor his medical conditions rise to the level of "extraordinary and compelling." [3]

Even if Defendant had established an "extraordinary and compelling reason," the Court concludes that Defendant's motion would still be denied based on its analysis and balancing of the § 3553(a) factors. The Court has balanced those factors in light of the compassionate release issues not in play at the original sentencing. *Kibble* at 335 (Gregory, C.J., concurring). In conjunction with the § 3553(a) factors, it is appropriate to highlight the facts of the instant offense and the Defendant's criminal history. Prior to the revocation of Defendant's term of supervised release, which will be discussed further after a discussion of criminal history, he was previously convicted of serious drug conduct: (1) two counts of trafficking crack cocaine in 1998; (2) trafficking crack cocaine in 1999; (3) possession of crack cocaine in 2002; (4) receiving stolen goods in 2002; (5) possession of a stolen vehicle in 2002. PSR ¶¶ 28, 31, 32, 33. Defendant was sentenced to 4 years of incarceration for his 1998 conviction for trafficking crack cocaine. PSR ¶ 28. After serving that sentence, he immediately reengaged in drug activity and was sentenced to 4 years incarceration on the 1999 conviction for trafficking crack cocaine. PSR ¶ 30. His next conviction for possession of crack cocaine in 2002 led to a sentence of 5 years suspended to 3 years. PSR ¶ 31. Finally, Defendant was sentenced to 5 years suspended to 3 years for

---

[3] The Court also notes, as stated in the Government's brief, that the BOP began administering COVID-19 vaccines to inmates and staff in January 2021. According to BOP records, approximately 205,887 doses have been administered as of August 4, 2021.

receiving stolen goods and possession of a stolen vehicle in 2002. PSR ¶¶ 32, 33. The Defendant is a career offender and is in a criminal history category of VI. PSR ¶ 37. A review of Defendant's criminal history demonstrates his disrespect for the law and his propensity to engage in criminal activity. Defendant has an extensive criminal history for various drug related offenses dating back to 1998. In light of Defendant's criminal history, the Court concludes that "the history and characteristics of the defendant" weigh against release.

The Court also concludes that "the nature and circumstances of the offense" weigh heavily against release. The Defendant committed the instant federal offense while on supervised release for his original federal offense of conspiracy to possess with intent to distribute 24 kilograms of crack cocaine, a significant amount. PSR ¶ 23. The full facts of the instant offense are outlined in Paragraphs 7 – 23 of the PSR. The Court will not restate all the facts here but will highlight the more significant details. The PSR states that Defendant participated in "an armed drug trafficking organization that operated in the Little River section of Horry County, South Carolina, since approximately 2003." PSR ¶ 23. The Defendant was identified as one of the leaders of the group that distributed kilograms of crack cocaine. *Id.* Bell would travel to the Longwood Section of Brunswick County, North Carolina, to pick up one kilogram of crack cocaine every week. PSR ¶ 9. Defendant brought the kilograms of crack cocaine back to South Carolina, where he "would distribute crack cocaine all day, every day on Malcom Drive in Little River, South Carolina." PSR ¶ 11. Bell would sell various quantities of crack cocaine in the Horry County area, "ranging from one

tenth of a gram of crack cocaine up to an eight ball of crack cocaine (3.5 grams)." PSR ¶ 15. Others stated they purchased higher quantities of crack cocaine from Bell, sometimes up to 1.5 ounces, on two to three times per week for approximately three months. PSR ¶ 21. Bell carried a .45 caliber pistol with him at all times. He received a 2 level guidelines enhancement for possession of a firearm and a role enhancement. Bell was held accountable for 24 kilograms of crack cocaine, as well as the firearm he possessed during the conspiracy. PSR ¶ 23.

Bell's period of supervised release for the above-mentioned federal offenses commenced on September 1, 2017 after this Court granted both a §3582(c)(2) and Rule 35(b) reduction. While on supervised release, Defendant violated the terms of his supervised release on multiple occasions in a short period of time. He tested positive for marijuana on February 7, 2018, tested positive for cocaine on April 6, 2018, failed to participate in drug treatment as ordered by this Court during August 2018, and was arrested and charged with assault and battery on December 9, 2017. Furthermore, Defendant engaged in new criminal conduct when he was arrested by the DEA when he attempted to purchase 5.7g and 6.6g of cocaine base on September 7, 2018. His supervision was revoked, and Bell was subsequently indicted for possession with intent to distribute cocaine from an prior incident on April 12, 2018 and June 25, 2018. As to §§ 3553(a)(3)-(4)—the kinds of sentences available and the sentencing range established for the offense—the Court notes that Defendant was sentenced within the Guideline range. His Guideline range was 51-60 months. The

Court imposed a 57-month sentence with no supervised release to follow. ECF No. 853. Therefore, the Court concludes that these factors also weigh against release.

In sum, Defendant has committed repetitive and serious drug conduct since he was 18 years old. His conduct demonstrates his disrespect for the law and his propensity to engage in criminal conduct. A review of the instant offense and Defendant's criminal history leads the Court to conclude that § 3553(a)(2)—the need for the sentence imposed—weighs against release. Defendant's sentence was and is necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from further crimes of the defendant.

As stated above, in light of the serious nature of the instant offense and Defendant's criminal history, the sentence imposed was necessary to reflect the seriousness of the offense and to protect the public from further crimes of Defendant. The Court's § 3553(a) analysis counsels that release is not warranted, and Defendant must serve the remainder of the sentence imposed.

In light of the seriousness of the instant offense, and Defendant's criminal history, the Court finds that the § 3553(a) factors weigh against release. Accordingly, his compassionate release motion, ECF No. 960, is **DENIED**.[4] [5]

---

[4] To the extent he seeks an order directing the BOP to grant him an early release to home confinement pursuant to the CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020), the Court does not have discretion to issue such an order. *See, e.g.*, *United States v. Hendrix*, No. 1:10-cr-00067-MR-WCM-2, 2020 WL 2319698, at *1 (W.D.N.C. May 11, 2020) ("The discretion to release a prisoner to home confinement lies solely with the Attorney General. The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this." (citations omitted)).

[5] The Court has given careful and full consideration to the Fourth Circuit's recent per curiam opinion in *United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021), including the concurring opinions, and has

IT IS SO ORDERED.

                                                              <u>s/ Terry L. Wooten</u>
                                                              Terry L. Wooten
                                                              Senior United States District Judge

December 20, 2021
Columbia, South Carolina

---

applied those standards in considering this motion. It has also reviewed the Fourth Circuit's recent decision in *United States v. High*, 2021 WL 1823280 (4th Cir. May 7, 2021) and has similarly applied those standards.